Good morning, your honors. My name is Russell Love on behalf of Royal Indemnity Company. I will reserve seven minutes of time and that rebuttal time will be shared with Mr. Jones who will be addressing the attorney's fees argument. American Guarantee sued Royal claiming that Royal was required to provide additional insured coverage for Bellevue Master. In order to prove its case, American Guarantee had to prove two things. First, it had to prove that the Royal policy provided additional insured coverage for Bellevue Master, that is, that Bellevue Master was an additional insured coverage. We're back talking about the original suit, huh? Correct. Okay. And in other words, it had to prove that there was a contract requiring additional insured coverage. Second, it had to prove that the Royal policy was primary to that of American Guarantee. So those were the two elements that it needed to prove. Now, on the trial in this matter, the district court held, determined after its fact-finding that there was no contract. That went up to this court. This court decided, yes, there was a contract, but the court did not address the question of the priority of coverage as between Royal and American Guarantee. And then there was a motion, there were a series of motions to this court, one of which was a motion for a money judgment, is that right? That's correct. Which meant that somebody had to determine how much, what the judgment was. There was no dollar amount attached to anything at the point of the Ninth Circuit case. That's right. And that was remanded. That's correct. So the district court had to come up with an amount of money, which could be zero, presumably, but some amount of money that was the judgment. Well, the problem is that the whole premise of the motion that was being made in the Ninth Circuit, the request for attorney's fees, that assumed that American Guarantee had to be paid. But it wasn't, this is what I'm trying to clarify. It wasn't only a request for attorney's fees. Well, that's true. It was basically a request for a judgment. And it wasn't, that it wasn't entitled to because it had not proven that it was, that the Royal coverage was primary to the So on the appeal, had the mandate issued at the time that motion was filed? No. Well, the mandate, the mandate that was issued referred back to the, to the circuit's ruling initially. Well, but the, as I understand, maybe I'm wrong, and I may have to go back and actually look at the mandate. But my understanding was that the motion came after, after the court's mem dispo. That's correct. Did it ask the court to modify the disposition in any way? No. It just asked for, for what? What, you mean, you mean the, the The motion. The motion for attorney's fees? Yeah. No, it was, it was, it was assuming that, that it had prevailed. American Guarantee was assuming that it prevailed and was, was asking for, for attorney's fees as a result. But the problem is that, that it, under the, under the court's, under the circuit's ruling, American Guarantee had not proven that it was, that its coverage was, was, was excess to, to the Royal coverage. And therefore, Did you ever raise that argument in any of the proceedings below? Yes, we certainly I mean, directly? Well, pardon me? Did you raise it directly? Well, the, the problem is, in the, in the trial court, it, the issue never came up because the, the district court ruled that there was no contract. That was the issue, wasn't it? That, that, whether there was a contract or not was, was, was a primary issue. That And so it would appear that you could have raised this as an alternative argument, that even if there was a contract. Well, except, except that, except that under, under the complaint as filed by, by American Guarantee, the complaint said that, that the, that the privacy of coverage would be, it would be determined based on the, based on the terms of the contract and based on, on the terms of the insurance policies. Therefore, that issue could only really come up until, until after there was a, there was a contract. And moreover, what they are trying to Well, that's not, that's not really true. Because my, my understanding here is that the American Guarantee excess contract was for what, like $10 million? Correct. So it was certainly going to eat up the entire excess if it came first. Correct. So it was always available to you to defend the, the entire case, whether there was or wasn't a contract, on the ground that even if there was a contract, you, you're not going to have to pay because you're, you're third. Yeah. Well, well, yes. But the, but the question, the question is at what point can you, can you raise that when they are I, I, I just, it's just not true that you needed to know what the contract was in order to make that defense. Is that right? Well, not according to the, to the district court's judgment in this case on, on this issue. Because the district court decided the issue based on the, on the trade contract that, that this, that this court found. Is that a priority question? Yes. I see. So you're saying you needed to know what was the source of the, but, but your position is that no matter what the trade contract said, our policy as written makes us third in line. That's correct. Yeah. So. So, so the question is why, why shouldn't that have been raised a long time ago? Well, because according, according to them. Who's them? And according to the, to, to the district court, the, the trade contract controlled the issue. And until we, we knew what the, what the trade contract was, we didn't know whether or not the coverage would be, would be primary or excess. And moreover, that is part of, of the plaintiff's, that is what the plaintiff needed to prove in order to, to recover against Royal. In order to prove, to prove its case, it had to prove the two things that I, that I outlined. Both the, both the existence of a contract and the, the primacy of coverage. That's what it, what it alleged in, in its complaint. It never, it never proved the primacy of coverage either at the, at the trial in the first case or in the, in the hearings in the, in connection with the, that are on review right now. What it did is, is it argued that it, it simply, well, Judge Peckman found that in ruling on the issue that, that the Royal coverage was primary to the American guarantee coverage. But that was based on the district court's decision that the, that the, that the trade contract required the, the coverage to be primary. Which, which was clearly, which was incorrect based on the language of the, of the trade contract. Moreover, was incorrect based on the language of the, of the Royal policy. So here we are before this Court the third time. So could you explain to me what the mandate of the Court in the, of our Court in the second appeal referred to motions? Would you? What the, what the, what the mandate, what the mandate simply, simply said is this, this is, is remanded to the district court based on the, on the, the Court's. Decision. I think it's October memorandum decision. Right. And then there were post-judgment motions. And, and those were referred to the district court. Could you, what, what, what is your understanding of what those motions were? Well, what, what they were asking. What was for a fee? They were asking, they were asking for a fee. They were asking. They being. American guarantee. American guarantee. And they, they were asking for, for a money judgment. Which this, which this Court did not rule upon. And in fact, the, the, this Court in its memorandum decision did not rule, expressly did not rule on the question of, of primacy of coverage. Even though American guarantee specifically asked it. I mean, there was nothing in the earlier litigation that did address the primacy question. That's right. There might have been an assumption that, that it was. Well, you, but you, but you couldn't, again, what I'm getting to is you couldn't get to the, to the primacy question unless. Well, even if you could, it didn't. Well, yeah, the district court in the, in the trial never reached the, the primacy question. Nor did the Ninth Circuit. Pardon me? Nor did the Ninth Circuit. That's right. And the primacy question would have arisen in any event. I mean, even if, and the way this money amounts were set up, the result of the primacy question is that you owe zero. But that isn't, wouldn't necessarily be so. It could have been a million, a million, a million, and you still have to reach the primacy question in order to determine the amount of the judgment. I'm sorry, I'm not following your question. I'm saying that as it turns out, the primacy question results in your owing zero. Correct. But that's not inherent in the primacy question. It was only inherent in it because of how, of what each insurer was insuring. But it could have been that American Guarantees was a million dollars and you would still owe something. So you'd still have to reach the primacy question. In other words, in order to decide the judgment. That's correct. Very confusing. Okay. Thank you. If you're going to share time, then it's. No? That's on recall. Okay. All right. Okay. Thank you. Good morning. May it please the Court. I am Jacqueline Beatty, counsel for American Guarantee. I think the Court understands that this was an issue that Broyle never raised at any time until after the second appeal. But. Did it need to raise it? Oh, go ahead. It is logically sequential, right? It is not. I mean, until one. It comes up when you're trying to figure out who's going to pay who how much. There was no issue here as to whether the amount American Guarantee was seeking could not be satisfied by the excess coverage that was available. In other words, Judge Schroeder, I believe you were correct when you said it doesn't matter if, based on Broyle's policy language, it was excess to the universe of insurance, including American Guarantees, which went up to $10 million. It would never have to pay. Okay. But the district court never ruled that it was primary. That's because Broyle never contested it. But we put on evidence at trial and raised the issue. I'd like to refer the Court to places in the record where American Guarantee raised the issue and Broyle simply did not respond. I'd also like to point out that in this Court's second decision, there is a footnote that says, both parties agree that if the Westchester policy covers Bellevue Master, the Broyle surplus policy also applies. I presume that footnote came from the fact that in our brief on the first appeal, we had devoted a section to arguing that the Broyle and Westchester coverage was primary and non-contributory. In filing their briefs in opposition to that, that argument was simply not responded to. Why was it not responded to? Because there was no ruling in the district court that it was pertinent to. It would not be the district court did in its findings say... After the trial? Yes. There was a finding after the trial where the district court mentioned the relationship of the coverage. But it didn't go beyond that because the court concluded there was simply no contract requiring insurance. Broyle, in a different case, in a case that it cited, same lawyer, the Jeanne case, Broyle was tendered a claim. And it wrote back to its insured and said, same policy that's at issue, type of policy that's at issue here, although different facts. They wrote back and said, even if our policy would otherwise apply, we are excess and the amount at issue is never going to reach our policy, therefore we're not going to respond to this loss. If they believed from the beginning, given that we know how much American Guarantee was looking for, that their policy would never be touched, they should have let us know at the beginning and that would have gotten Broyle out of the case because the issue can be decided as a matter of law. Now, let's assume you're right about all this. Is it still true that we have to decide the same issue in order to deal with the fees question? No, because Westchester is going to remain responsible for the fees, even if this court decides that Broyle's policy never attached. In Broyle's... I don't understand, but the question is whether Broyle's going to be responsible for it. If this court decides that Broyle's policy is access to American Guarantees, which would be inconsistent with what the court... All right, but I'm asking whether we're going to have to reach that question. The consequences would be different. Presumably it wouldn't get Broyle out of paying the judgment, but in terms of Broyle paying the fee, do we still have to address the same question? The fees are owed under Olympic Steamship, which provides that... Does it depend on whether they were excess or not? Broyle's policy wouldn't respond, and there would be no coverage if, in fact, it is excess. Or my understanding is if it's excess, even if they owe the fees, they're not equitably subrogated so they wouldn't get Olympic fees. American Guarantees... You would be getting fees, you would be asking, then you'd be asking for contribution and you wouldn't be getting Olympic whatever fees. If we were considered like co-excess carriers, you're correct. So don't we have to address the same exact question in order to decide the fees issue? Well, if the court decides we're co-excess carriers, we can't collect our fees from Broyle. And wouldn't we have to decide that question even if they waived it with regard to the judgment? They didn't waive it with regard to the fees. Broyle did waive the argument. They were on notice in our trial brief, in the pretrial order, and based on the testimony we presented at trial. But they certainly didn't waive it with regard to the fee question. They conceded by not arguing otherwise throughout the case that their policy was primary and non-contributory vis-à-vis American Guarantee. From their brief on the second appeal, they said American Guarantee filed suit claiming Bellevue Master... But then why did the district court address the question? Why did it? It did eventually address the question, didn't it? They did, and I actually would submit the district court erred by substantively considering the issue. However, it was harmless error because the court ultimately decided that American Guarantee, even if you got to the merits of the priority question, was still excess to the additional insured coverage that was provided by Westchester and Broyle. This Court's mandate limited what the district, at least as I read it, this Court said no further briefs are... Wait a minute. It didn't say that. That has nothing to do with this. Yeah, they didn't say that. When they remanded the case to the district court... No, they had already reversed. The mandate had already issued. Yes. The consequences of that are whatever it was. Then there were some motions, and they remanded the motions. Yes. They didn't modify the mandate in any way, and the statement about no further statements is something we put in all the time, and all it means is don't bother us anymore. It doesn't tell you anything about the district court. Okay. The motion was filed in this Court because we were asking for fees as the prevailing party in appeal, and we had to file that motion in this Court within 14 days after the motion for reconsideration of Royal and Westchester was denied. So we had to file the motion in this Court. All the Court did was transfer it to the district court. We do that, I won't say all the time, but we do do that. Right. I understand that. But I was trying to... We said you district court determine this. Yes. And we didn't say don't determine anything else because we didn't change whatever, we didn't do anything to the earlier mandate, so whatever it meant, it meant. Fair enough. Do you want me to address further the places in the record where Royal... I think what you should address, because we don't have that much time left, is the fee question. Okay, the fee question. As an excess carrier, under the law of Washington State, we stand in the shoes of the insured. We have the rights and the responsibilities of the insured. Washington courts have been very generous. There was no contract on that, saying that, right? Right. There was no assignment here. However, we did assert an equitable segregation claim, consistent with what Washington law permitted under First State v. Peckman. But what's weird about it, and I think this is what was bothering Judge Peckman, is that from the insured's point of view, they were going to get paid one way or another. So they didn't have to file any lawsuit in order to see that they got paid, because they were getting paid one way or another. The interest is yours, that you not pay it, that somebody else pay it. But that's why I think Judge Peckman thought that there was sort of a lack of equity here in terms from the point of view of the insured. So if you're stepping into the shoes of the insured, the insured didn't care. Well, the insured would care. Judge Peckman relied on Polygon, and Polygon, that was my case, actually, so I'm quite familiar with it. They were co-excess carriers fighting about contribution. So the reliance on Polygon was misplaced. But why isn't this now a dispute between the carriers? Well, it is a dispute between carriers. However, as shown in the American Dynasty and Amazon case, if you're a carrier in an excess position that has to pursue a carrier in a primary position to do what that carrier should have done from the get-go, which was settle this case on behalf of American guarantees named insured Bellevue Master, they shouldn't be rewarded by foot-dragging. McCrory, which is another case of mine in which I lost 9-0, the Washington Supreme Court was quite adamant about the fact that there are certain principles behind Olympic steamship fees. It's more than just, well, from the insured's point of view, the more its own carrier has to pay, such as American guarantee, the worse that insured's loss experience is the next time they go out into the marketplace to procure insurance. So it does matter. Is that really what we're talking about under Washington law with equitable subrogation? Well, I think it goes to the point. It seems a little indirect. Well, it goes to the point of does the insured here who was fully indemnified and fully defended have an interest? I mean, I don't, this is really out of the record, but it would make a difference with regard to their own loss record, whether it was either Royals paying it or you're paying it, but you're still paying it for what they did. That makes a difference? Yes, it would. Because when Bellevue Master would go into the marketplace to renew its own insurance, they would look at what Bellevue Master's own policies had paid. And that's one of the reasons you have this scheme of insurance and construction contracts, where owners and general contractors look to allocate their risk, spread the risk, so that if a loss arises out of a particular subcontractor's operations, that subcontractor's liability insurance pays so that it doesn't reflect on the general contractor's or the additional insurer's own coverage. That's the point of it. You know, the principles behind Olympic Steamship are not just reimbursement, and certainly American Guarantee was out money here and is looking for reimbursement, but it's to avoid insurers who don't step up to the plate when they should step up to the plate, dragging their heels and getting a deal, forcing the carrier who didn't have the primary obligation to pay, into court five years of litigation later. So if you're to give any meaning to the Washington court's statement that the excess carrier steps into the shoes of the insured and has all of the insured's rights and responsibilities, it's not logical to carve out an exception that when the excess carrier has to sue the primary carrier to pay a judgment, the primary carrier should have paid to start with, doesn't get all of those rights, that somehow that particular right is carved out. And when you look at, for example, the Amazon versus American Dynasty case, the court says, further, as an excess insurer, American Dynasty possesses the same rights against the primary insurer as does the insured. American Dynasty is thus entitled to its fees herein. That's existing Washington law that I believe this court is bound to follow. I'll save my last minute and 30 seconds for rebuttal. I'm curious as to whether Apolli gets rebuttal, but that's it. No, I don't know. On the fees. Good morning. Thomas Jones, Counselor for Westchester Surplus Lines, a respondent to Apolli on the cross-appeal filed by American Guarantee. After the district court issued its apportionment ruling, my client satisfied the judgment. So my client paid its remaining limits of $850,000. And what you're representing? I represent Westchester. Westchester. And it has satisfied the judgment, so the only appellate issue that impacts my client, the principal issue, is fees, whether or not the Olympic Steamship Doctrine should be extended to an equitable contribution claim. Because Judge Peckman got it right. This is an equitable contribution claim. The flaw in American Guarantee's argument is that there was a right that its insured still had maintained against Royal and Westchester, and that's simply not true. Bellevue Master, the insured, who was found to be an additional insured under the policy of Royal and Westchester, was fully indemnified and fully defended. As a consequence, Bellevue Master had no cause of action against either Royal or Westchester non-participating insurers at the time. And the law is abundantly clear. The cases that we cited, the trilogy of cases that have dealt with the issue recently, the Polygon case, the SACO insurance case, and the Trinity case, all stand for that proposition. And that's why the district court got it right here. The district court concluded that this is nothing more than an apportionment action, one for equitable contribution. After all, if you look at the American Guarantee complaint, American Guarantee sought equitable contribution, equitable subrogation in its own name, for its own losses, did not assert that there was an assignment of rights, did not assert that its insured suffered any harm, because in the trilogy of cases that I just mentioned, the insured could not suffer any harm. If the insured is fully defended and fully indemnified, which it was here, it can recover only once under Washington law, and it did that. That then left American Guarantee the equitable contribution, apportionment right against Royal and Westchester. Suing for its own interest. That's correct. As an overpaying insurer, that's the law in Washington. It's abundantly clear. So the district court was right. The district court got it right. And the leading case under Washington law for that is what? Is Polygon. Subsequently, Your Honor, followed by the SACO insurance case, then followed by the Trinity case. All three of those decisions. The distinction between McCrory and Mid-Continent, though, did allow Olympic steamship fees. And the difference is whether it was contractual subrogation or equitable subrogation. Is that basically it? More than that, Your Honor. It's whether or not the insured maintained a cause of action against the insurer. And in McCrory, it did. McCrory and Mid-Continent insurance. That's correct. That's exactly right. In fact, in all the cases cited by American Guarantee, as pointed out by Judge Peckman, they're all distinguishable. In each and every one of those cases, either the insured maintained a cause of action against the nonpaying insurer, or there was an assignment of that cause of action, or there was no shared liability, because in Washington, as we point out in our brief, a subrogation case has to be one where the subrogee or the subrogated insurer asserts that the entire loss should be paid by another insurer. Here, there is nothing more than shared liability. After the reimportionment decision by Judge Peckman, there was shared liability. And the largest share belonged to American Guarantee of $1.325 million. A million to Royal, $850,000 to Westchester. So very simply, this is a case of shared liability of insurers who were found to have coverage for the same insured, and therefore, its equitable contribution. And Washington courts are very clear that they will not extend the Olympic Steamship Doctrine to equitable contribution. And as we know, the Olympic Steamship Doctrine is the carve-out of the American rule because of the fiduciary relationship between the insured and the insurer, which we don't have when it's simply equitable contribution among insurers. Okay, thank you. Thank you. Do you have a question? Yeah, I do have one question. I don't understand this distinction of McRory and Midcontinent. I mean, McRory, I don't see, McRory says that we have not confined the recovery of fees under Olympic SS rules to the insured personally. And I don't, I didn't see where it establishes that the insurer had sued first or even why that would matter. I mean, the fact is that it was ultimately the excess, the primary insurer that ended up paying and they want the fees because they said we shouldn't have had to pay. That's correct. And, Your Honor, and the Trinity decision distinguished McRory. The Trinity court said. But not on that ground. Well, on the ground that the insured maintained a cause of action against the primary and the excess stepped in the shoes of the insured to sue the primary. In fact, that's what all of the primary excess cases stand for in the context of subrogation. The insured, by not being defended or indemnified by the primary or if the primary mishandled a claim, the excess carrier, by virtue of a subrogation right, stands in the shoes of the insured and has a cause of action against the primary. But the fundamental issue is here the insured had no cause of action at all because it was fully indemnified and defended. So it could never be a subrogation of the cause of action. But the difference is whether the primary, the, I mean, we're assuming for present purposes that American Guarantee was an excess insurer. It's kind of as a volunteer paid the cost and now is going, you know what. No. Because remember that Bellevue Master was American Guarantee's named insured. Right. And it was alleged that Bellevue Master was also an additional insured under the Royal and Westchester policy. And Royal and Westchester didn't agree with that notion. But American Guarantee's position is we don't owe this money, Royal and. Well, American Guarantee's position was we're going to protect our insured, which is not uncommon. That's what I'm saying. It's a volunteer because their position is we don't owe this money, but we're going to do it. Well, not as a volunteer because, remember, American Guarantee owed rights to Bellevue Master as its own named insured. So it was not a volunteer. It had a duty to defend and indemnify, and it did that. But it then alleged that because later the district court concluded that Bellevue Master was also insured as an additional insured under the Westchester and Royal contracts, then American Guarantee had a contribution claim against those two insurers. Not a segregation claim. Did that arise after the first appeal? I'm sorry? Does that arise as a consequence of our decision on the appeal? That's correct. Once there was a decision that Bellevue Master was an additional insured, that's when it arose. And that's why. So, again, just to try to simplify things, if I may, real quick. Okay. The distinction and the flaw that is important here with respect to American Guarantee's theory, it's insured, was fully defended and indemnified, and had no cause of action against either Westchester or Royal, and therefore it cannot be a subrogation case. And you're saying, and it was fully defended and indemnified as a matter of contractual right with American Guarantee. That's correct, Your Honor. Not just because American Guarantee was. That's correct. That's exactly right. Thank you. Thank you. We appreciate your arguments on both sides. And we'll have the matter submitted at this time.
judges: Schroeder, Paez, Berzon